# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | **CRIMINAL COMPLAINT** |
| v. | Hon. Cathy L. Waldor, U.S.M.J. |
| JUNIUS AQUINO, a/k/a "Jayo," and | Mag. No. 21-9041 |
| LARRY ORTIZ, a/k/a "Savage" | |

I, Cyril Pereira, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

**SEE ATTACHMENT A**

I further state that I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives and that this complaint is based on the following facts:

**SEE ATTACHMENT B**

_____by phone_____
Cyril Pereira, Special Agent
Bureau of Alcohol, Tobacco,
Firearms, and Explosives

Special Agent Pereira attested to this Complaint by telephone pursuant to Federal Rule of Criminal Procedure 4.1 on January ___, 2021 in the District of New Jersey.

HONORABLE CATHY L. WALDOR
UNITED STATES MAGISTRATE JUDGE                Signature of Judicial Officer

## ATTACHMENT A

### COUNT ONE
(Violent Crime in Aid of Racketeering – Assault with a Dangerous Weapon)

On or about October 28, 2020, in the District of New Jersey and elsewhere, the defendants,

**JUNIUS AQUINO,**
a/k/a "Jayo," and
**LARRY ORTIZ,**
a/k/a "Savage,"

for the purpose of maintaining and increasing position in the Pagan's Motorcycle Club, an enterprise engaged in racketeering activity, did knowingly and purposely assault Victim-1 with a dangerous weapon, namely, a firearm, contrary to N.J.S.A. 2C:12-1(b) and 2C:2-6, and did aid and abet the same.

In violation of Title 18, United States Code, Section 1959(a)(3), and Title 18, United States Code, Section 2.

## COUNT TWO
**(Discharging a Firearm During and in Relation to a Crime of Violence)**

On or about October 28, 2020, in the District of New Jersey and elsewhere, the defendants,

**JUNIUS AQUINO,
a/k/a "Jayo," and
LARRY ORTIZ,
a/k/a "Savage,"**

during and in relation to a crime of violence for which the defendant may be prosecuted in a court of the United States, namely, assault with a dangerous weapon in aid of racketeering as charged in Count One of this Complaint, did knowingly discharge a firearm.

In violation of Title 18, United States Code, Section 924(c)(1)(A)(iii), and Title 18, United States Code, Section 2.

## ATTACHMENT B

I, Cyril Pereira, am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives. I am fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents, videos, photographs, lawfully intercepted communications, and other items of evidence. The information set forth herein contains information obtained from investigators and other law enforcement officers who have interviewed numerous witnesses and sources. Where statements of others are related herein, they are related in substance and part. Because this complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

### The Enterprise

1. At all times relevant to this Complaint, defendants Junius Aquino, a/k/a "Jayo" ("AQUINO"), Larry Ortiz, a/k/a "Savage" ("ORTIZ"), and others known and unknown were members and associates of the Pagan's Motorcycle Club (the "Pagans" or the "Enterprise").

2. The Pagan's Motorcycle Club has been classified as an outlaw motorcycle gang by multiple law enforcement agencies. The Department of Justice has designated multiple outlaw motorcycle gangs, including the Pagans, as violent gangs. Members of the Pagans are known to engage in criminal activities such as violent crimes, weapons trafficking, and drug trafficking. The Pagans maintain established membership chapters in numerous U.S. states and territories, including multiple active chapters in New Jersey.

3. The Enterprise was established in the late 1950s and continues to employ a hierarchal rank structure and formal by-laws. Each chapter has its own organizational structure. Each is managed by a President, a Vice President, a Sergeant at Arms, and a Secretary/Treasurer. On a national level, the Pagans report to a leadership council that is generally comprised of thirteen former chapter presidents known as the "Mother Club." The Pagans also appoint a national President, Vice President, Sergeant at Arms, and Secretary/Treasurer, all of whom are part of the Mother Club.

4. Historical acts of violence indicate that outlaw motorcycle gangs, including the Pagans and the Hells Angels Motorcycle Club (the "Hells Angels"), commonly commit acts of violence motivated by disputes over territory. The Pagans and the Hells Angels are known to be rival gangs. Both gangs have established membership chapters in New Jersey.

5. The Pagans also use violence to discipline their members for breaking the organization's rules. The practice of committing Pagan-sanctioned acts of

violence against its own members in retaliation for breaking the Pagans' rules is known within the organization as "regulation."

6. Members of the Pagans are known to engage in trafficking of narcotics including, but not limited to, methamphetamine and cocaine. Over the course of the instant investigation, law enforcement has recovered significant quantities of methamphetamine and cocaine from numerous members of the Pagans, including AQUINO, ORTIZ, and other members of the New Jersey chapters.

7. The Pagans, including its leaders, members, and associates, constituted an "enterprise" as defined in 18 U.S.C. § 1959(b)(2), that is, a group of individuals associated in fact, which was engaged in, and the activities of which affected, interstate and foreign commerce. The Pagans constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

8. At all times relevant to this Complaint, the Pagans, through its leaders, members, and associates, engaged in racketeering activity, as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1)—namely, offenses involving the felonious manufacture, importation, receiving, concealment, buying, selling, and otherwise dealing in a controlled substance punishable under the laws of the United States, in violation of 21 U.S.C. §§ 846 (conspiracy to distribute and possess with intent to distribute controlled substances), 841 (distribution and possession with intent to distribute controlled substances), and 843(b) (use of a communication facility to violate the Controlled Substances Act).

## Purposes of the Enterprise

9. The purposes of the Enterprise included, but were not limited to, the following:

   a. Enriching the members and associates of the Enterprise through criminal activity, including drug trafficking;

   b. Promoting and enhancing the prestige, reputation, and position of the Enterprise with respect to rival criminal organizations;

   c. Preserving and protecting the power, reputation, territory, and criminal ventures of the Enterprise through the use of acts that involved intimidation, threats of violence, and acts of violence, including assault against, among others, members of rival organizations and members of the Pagans who violated the rules of the Enterprise;

   d. Keeping victims and rivals in fear of the Enterprise and its members and associates; and

e. Concealing the activities of the Enterprise from law enforcement.

## Means and Methods of the Enterprise

10. Among the means and methods by which members and associates of the Pagans conducted and participated in the conduct of the affairs of the Enterprise were the following:

   a. Members and associates of the Pagans committed, attempted, and threatened to commit acts of violence, including assaults, to protect and expand the Enterprise's criminal operations;

   b. Participation in criminal activity by a member, particularly violent acts directed at rivals or as directed by the Pagans' leadership, increased the respect accorded to that member, and resulted in that member's maintaining and increasing status in the Enterprise;

   c. Members and associates of the Pagans used and threatened to use physical violence against various individuals, including members of rival organizations, and also used and threatened to use violence to discipline their own members for breaking the organization's rules.

   d. Members and associates of the Pagans trafficked methamphetamine and cocaine as a means of enriching themselves.

## Membership in the Enterprise

11. At all times relevant to this Complaint, AQUINO served as the Vice President for the Pagans' Elizabeth, New Jersey membership chapter. On or about November 5, 2020, law enforcement executed a search warrant at AQUINO's home. During the warrant execution, law enforcement observed AQUINO's Pagan "cut."[1] AQUINO's cut displayed patches indicating that AQUINO is a ranking member of the Pagans.

12. At all times relevant to this Complaint, ORTIZ served as the President for the Pagans' Jersey City, New Jersey membership chapter. On or about November 17, 2020, law enforcement executed a search warrant at ORTIZ's home. During the warrant execution, law enforcement observed ORTIZ's Pagan cut. ORTIZ's cut displayed patches indicating that ORTIZ is a ranking member of the Pagans.

---

[1] "Cuts" are vests worn by motorcycle club members that identify membership in a particular club. Cuts often contain patches that signify, among other things, a member's status in the club.

13. Victim-1 was a known associate of the Hells Angels at the time of the October 28, 2020 assault.

### The October 28, 2020 Assault

14. On or about October 21, 2020, AQUINO visited a bar in Verona, New Jersey with other known members of the Pagans. When AQUINO and his associates exited the bar, a group of individuals approached and assaulted them with baseball bats. The assault was captured on video. AQUINO sustained injuries for which he sought medical treatment. Lawfully intercepted communications revealed that multiple ranking members of the Pagans believed the assault had been carried out by members of the Hells Angels.

15. Approximately one week later, on or about October 28, 2020, AQUINO and ORTIZ perpetrated a retaliatory shooting against Victim-1, who is an associate of the Hells Angels. Statements made by Victim-1 coupled with video footage captured in the aftermath of the shooting indicate that the shooting occurred as follows. Sometime after 4:00 a.m., Victim-1 drove his white Dodge Ram (the "Dodge") onto the New Jersey Turnpike at Exit 12. While Victim-1 drove between Exits 12 and 13, the male passenger of a dark-colored Honda sedan discharged a firearm at the Dodge. The passenger fired shots at the Dodge while standing up through the sunroof of the Honda. Law enforcement subsequently examined the Dodge and observed damage consistent with bullet holes on the truck. As set forth below, the investigation revealed that AQUINO and ORTIZ used the Honda to commit the shooting.

16. Toll records show that a black Honda Accord registered to Individual-1 (the "Honda") exited the New Jersey Turnpike at approximately 4:26 a.m. Toll records further indicate that the Dodge exited the New Jersey Turnpike through the same toll plaza moments before the Honda. Individual-1, to whom the Honda is registered, is a known associate of the Pagans.

17. At the time of the shooting, AQUINO co-owned and operated Professional Motor Care, an autobody shop located in Newark, New Jersey. Lawfully obtained video surveillance footage captured inside the shop on the morning of October 28, 2020 revealed that AQUINO and ORTIZ brought a dark-colored Honda sedan into the garage of Professional Motor Care. The video footage depicting the Honda sedan entering the garage is timestamped 5:31— approximately one hour after the Honda exited the Turnpike following the shooting. The video footage depicts firearms tucked into AQUINO's and ORTIZ's waistbands.

18. Approximately one week after the shooting, on or about November 5, 2020, law enforcement executed a search warrant at Professional Motor Care.

When the search warrant was executed, law enforcement observed the Honda registered to Individual-1 inside the shop.

19. Based on the facts that: (1) high-ranking members of the Pagans believed members of the Hells Angels had committed the October 21, 2020; (2) AQUINO and ORTIZ held leadership positions within the Pagans at the time of the October 28, 2020 shooting; and (3) Victim-1 was a known associate of the Hells Angels; there is probable cause to believe that AQUINO and ORTIZ committed the October 28, 2020 shooting against Victim-1 in retaliation for the assault carried out against AQUINO and other Pagan associates approximately one week earlier.